UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TIMOTHY A. PALMER, | |
| Plaintiff, | |
| v. | CAUSE NO.: 2:19-CV-110-TLS |
| ANDREW SAUL, Commissioner of the Social Security Administration, | |
| Defendant. | |

**OPINION AND ORDER**

Plaintiff Timothy A. Palmer seeks review of the final decision of the Commissioner of the Social Security Administration denying his applications for disability insurance benefits and supplemental security income. Plaintiff argues that the Administrative Law Judge (ALJ) made several errors in formulating his residual functional capacity (RFC), including the weight given to opinion evidence, as well as cherry-picking and misinterpreting medical evidence. For the reasons set forth below, the Court finds that reversal and remand is required for further proceedings.

**PROCEDURAL BACKGROUND**

On August 4, 2015, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning November 12, 2012. AR 198, 205, ECF No. 10. The claim was denied initially and on reconsideration. *Id*. at 91, 119. Plaintiff requested a hearing, which was held before the ALJ on February 12, 2016. *Id*. at 143, 145. On April 13, 2018, the ALJ issued a written decision and found Plaintiff not disabled. *Id.* at 16–32. On March 20, 2019 Plaintiff filed his Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision. Plaintiff filed an opening brief [ECF No. 12], the Commissioner filed a response brief [ECF No. 17], and Plaintiff filed a reply brief [ECF No. 19].

**THE ALJ'S DECISION**

For purposes of disability insurance benefits and supplemental security income, a claimant is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b). In this case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 12, 2012, the alleged onset date. AR 21.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). Here, the ALJ determined that Plaintiff has the severe impairments of depression, personality disorder, attention deficit hyperactivity disorder, cognitive disorder, obesity, degenerative changes of the right foot, gout, obstructive sleep apnea, osteoarthritis, and tendonitis of the bilateral shoulders, status post left rotator cuff repair. AR 21.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of [the Code of Federal Regulations]." 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). If a claimant's

impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). Here, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that she considered Listings 1.00, 1.02, 12.02, 12.04, 12.06, and 12.08. AR 22.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) where the claimant can lift and/or carry 20 pounds occasionally, and 10 pound frequently, can sit up to six hours of an eight-hour workday, and can stand and/or walk up to six hours of an eight-hour workday. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, crouch, kneel, and crawl. The claimant must avoid concentrated exposure to extreme wetness, heat, humidity, fumes, odors, dusts, and gases, and poor ventilation. The claimant must avoid concentrated exposure to hazardous conditions. The claimant cannot reach overhead bilaterally. The claimant can have no public contact but can have brief impersonal contact with coworkers and supervisors.

AR 23–24.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work in light of the RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). In this case, the ALJ found that Plaintiff is unable to perform any past relevant work. AR 30.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" in the national

3

economy given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that Plaintiff is not disabled because Plaintiff can perform significant jobs in the national economy of package line worker, assembler, and inspector. AR 31. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1512, 416.912.

Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1–3. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401; *Bunge Corp. v. Carlisle*, 227 F.3d 934, 937 (7th Cir. 2000)). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v.*

*Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (quotations omitted); *see also Moore*, 743 F.3d at 1121 ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In this appeal, Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC by cherry-picking medical evidence, by failing to consider the circumstances of his previous work activity, by failing to properly consider medical opinion evidence, and by failing to properly consider the mental impairment Listings. The Court finds that remand is required for a proper evaluation of the medical opinion evidence and for proper consideration of past relevant work.

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R.

§§ 404.1545(a), 416.945. The determination of a claimant's RFC is a legal decision rather than a medical one. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); *see also Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3.

The relevant evidence includes medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The Court considers each of Plaintiff's arguments in turn.

**A.   Medical Opinion Evidence**

An ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Medical opinions are weighed by considering the following factors: (1) whether there is an examining relationship; (2) whether there is a treatment relationship, and if so the length of the treatment relationship, the frequency of the examination, and the nature and extent of the treatment relationship; (3) whether the opinion is supported by relevant evidence and by explanations from the source; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion was offered by a

specialist about a medical issue related to his or her area of specialty; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6).

### 1. Dr. Phillips, Treating Psychiatrist

Plaintiff argues that the ALJ failed to properly evaluate the opinions of Dr. Constance Phillips, M.D., his treating psychiatrist at the Veterans Administration. Dr. Phillips provided two separate medical opinions – a letter in 2015, and a medical source statement in 2017. AR. 750–51, 1317–22. In the 2015 letter, Dr. Phillips opined that Plaintiff was "quite limited regarding sustained concentration and his ability to understand verbal instructions either written or verbally communicated." *Id.* at 751. Dr. Phillips also opined that although he was appropriate in social interactions and had the capacity to persist, he may be more limited in the stress of a forty-hour work week. *Id.* Finally, Dr. Phillips opined that Plaintiff would be "greatly challenged … in his ability to adapt to his current psychosocial stressors of being unable to work in the areas he had previously done (physical jobs)" and that he was finding it difficult to do work in other areas due to his cognitive challenges. *Id.* The ALJ gave this opinion "little weight," finding that it was not generally consistent with the medical evidence of the record, "which indicates that the claimant was able to undergo standardized testing." *Id.* at 30. The ALJ also noted that Plaintiff's mental status examination during the psychological consultative examination was "grossly normal." *Id.*

In 2017, Dr. Phillips completed a medical source statement. She listed his diagnoses as major depression, recurrent, and borderline intellectual functioning. *Id.* at 1317. She listed his symptoms as moderately diminished interest in almost all activities, severe sleep disturbance, easily agitated, decreased energy, severe feelings of guilt or worthlessness, severe difficulty concentrating or thinking, previous thoughts of death or suicide, severe distractibility, moderate to severe irritability, mild avoidance of external reminders of a traumatic event, and moderate

7

disturbance in mood and behavior. *Id.* at 1318. She noted that Plaintiff was taken off his medication due to side effect weight gain, and that this resulted in more symptoms of depression and irritability. *Id.* Dr. Phillips opined that Plaintiff would be absent from work more than three times a month. *Id.* Dr. Phillips also opined that Plaintiff would have significant difficulties in multiple areas relating to the ability to remember and carry out instructions and maintaining attendance. *Id.* at 1319. Finally, Dr. Phillips opined that Plaintiff had moderate limitations in the ability to understand, remember, or apply information; mild limitations in the ability to interact with others; marked limitations in the ability to concentrate, persist, or maintain pace; and moderate limitations in the ability to adapt or manage oneself. *Id.* at 1321. The ALJ afforded this opinion little weight and found it to be internally inconsistent. *Id.* at 29. The ALJ noted that although Dr. Phillips found Plaintiff to have a marked loss in his ability to interact appropriately with the public, she only found him to have a mild loss in his ability to maintain socially appropriate behavior. *Id.* The ALJ also found that the opinion was not generally consistent with the medical evidence of the record, "which indicates that the claimant can live with his family, attend Ivy Tech, and socialize with others on Skype." *Id.*

Plaintiff asserts that the ALJ mischaracterized and cherry-picked evidence in dismissing both of Dr. Phillip's opinions. First, Plaintiff argues that the ALJ mischaracterized Plaintiff's ability to undergo standardized testing in dismissing the 2015 opinion. The ALJ cites to the WAIS-IV IQ test in finding that Plaintiff could undergo standardized testing. *Id.* at 30, 418. The ALJ found that Plaintiff's ability to undergo standardized testing discredited the treating psychiatrist's opinion that Plaintiff was limited in his ability to maintain sustained concentration and in his ability to understand verbal instructions either written or verbally communicated. *Id.* at 30. However, the standardized testing to which the ALJ cites showed that Plaintiff's verbal comprehension skills fell within the borderline range. *Id.* at 411. The test also showed inattention

8

and elevated anxiety. *Id.* at 413, 416. Finally, the standardized testing that the ALJ alludes to showed that Plaintiff was reading at a sixth-grade level and writing at a fourth-grade level. *Id.* at 415. The clinician noted that all academic tasks "required excessive time and persistence" for Plaintiff, and that he was often frustrated easily and struggled with expressive language abilities. *Id.* The clinician further opined that Plaintiff would need accommodations to complete schooling, such as extended time (standard time plus 25%), frequent breaks, testing in a separate room, tutoring options, repetition of material, and the ability to record lectures for review. *Id.* at 416. The ALJ grossly mischaracterized the evidence in finding that an IQ test showing Plaintiff's limitations was evidence that contradicted Dr. Phillips' 2015 opinion.

Plaintiff also argues that the ALJ mischaracterized evidence in finding that his ability to attend classes at Ivy Tech contradicted Dr. Phillips' 2017 opinion. Plaintiff was enrolled in two courses at Ivy Tech in October of 2013 after having completed two courses the prior semester. *Id.* at 410. He was working towards a heating and cooling certificate; however, it was noted that he was "struggling with the academics and was referred to VR[1] for assistance by the school." *Id.* He reported difficulty with remembering what he read, as well as with general concentration. *Id.* Plaintiff testified to failing math twice at Ivy Tech, and that he yelled at the math instructor when he was in danger of failing for a third time. *Id.* at 61. Plaintiff also testified to never finishing his assistive technology training due to missing too many classes. *Id.* In 2016, it was noted that Plaintiff continued having "a hard time grasping new concepts at school and will benefit from ongoing [support] at school." *Id.* at 396. The ALJ improperly relied on Plaintiff's enrollment at Ivy Tech without considering the assistance he needed to complete coursework or the fact that he failed a class twice. Plaintiff's struggles at Ivy Tech support Dr. Phillips' opinion, yet the ALJ

---

[1] Vocational Rehabilitation. AR 61.

9

used his enrollment in courses to dismiss the treating psychiatrist's opinions.

Plaintiff also asserts that the ALJ mischaracterized the evidence of his ability to Skype with a woman. The ALJ relied on Plaintiff's ability to interact with a woman on Skype to dismiss Dr. Phillips' 2017 opinion. *Id.* at 29. The ALJ also relied on this in other areas in the opinion to discount Plaintiff's difficulty in interacting with others. *Id.* at 23, 27, 29. There is only one mention of Plaintiff using Skype to interact with others in the medical record. Plaintiff discussed with his counselor that he was talking to a woman on Skype whom he had only known for two months, and she was asking him for $1000. *Id.* at 551. Nowhere in the record does it indicate that Plaintiff continued to socialize with this woman on Skype, nor does it describe the nature of their relationship. Relying on Plaintiff's ability to interact with someone on Skype for a short period does not indicate that Plaintiff has the ability to interact appropriately with others, nor does it on its own contradict Dr. Phillips' opinions.

Furthermore, the ALJ failed to discuss the relevant factors in 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)– (6). Most importantly, the ALJ failed to properly compare the opinions to the medical record as a whole. Instead, the ALJ mischaracterized evidence in attempting to compare the opinions to the medical record. This error requires remand.

2. *Dr. Broughton, Treating Physician*

Plaintiff also asserts that the ALJ improperly weighed the medical opinion of Dr. Broughton, his treating physician at the Veteran's Administration. Dr. Broughton provided a medical source statement in 2017. *Id.* at 996–1003. Among other things, Dr. Broughton opined that Plaintiff had a reduced range of motion in his left shoulder, could sit continuously for over three hours at a time, could stand or walk for over three hours at a time, could constantly lift 6-10 pounds, and was limited to occasional reaching and handling with the left hand. *Id.* at 996–1000. Dr. Broughton also opined that Plaintiff's condition was expected to improve with time. *Id.* at

1002. The ALJ afforded this opinion great weight, specifically noting that Plaintiff's left shoulder has improved by his own admission and testimony. *Id.* at 30.

Plaintiff argues that the ALJ failed to include the limitation of occasional reaching and handling with the left hand in the RFC and in the hypotheticals to the Vocational Expert ("VE"). Plaintiff asserts that the ALJ's failure to include this information indicates that the ALJ either forgot it or found it irrelevant. However, the ALJ specifically noted that although she afforded Dr. Broughton's opinion great weight, Plaintiff admitted during the hearing that his left shoulder has improved. *Id.* Plaintiff also testified that he had no trouble using his hands. *Id.* at 57. The ALJ properly explained her logic in determining Plaintiff needed no further left shoulder limitations based on Dr. Broughton's opinions.

**B.     Work Activity**

Plaintiff argues that the ALJ also misconstrued his work history in finding that his previous job with Spaulding Tree Service ("Spaulding") as a tree trimmer was past relevant work. "[T]he ALJ must specify the duties involved in a prior job and assess the claimant's ability to perform the specific tasks." *Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991). Past relevant work constitutes relevant work experience for purposes of step four of the analysis when it (1) was done within the last fifteen years, (2) lasted long enough for the claimant to properly learn to do the job, and (3) was substantial gainful activity. 20 C.F.R. § 404.1565(a); *see also* SSR 82-62, 1982 WL 31386, at *1 (Jan. 1, 1982). However, Social Security Ruling 83-33 further explains that even if these three conditions are met, the ALJ must consider the possibility that the employer, "because of a benevolent attitude toward a handicapped individual, subsidize[d] the employee's earning by paying more in wages than the reasonable value of the actual services performed." SSR 83-33, 1983 WL 31255, at *3 (Jan. 1, 1983). More simply put, the ALJ must consider the possibility that an employer may have accommodated Plaintiff's restrictions on the job.

11

The ALJ failed to consider the multiple accommodations the Plaintiff's employer afforded him. Spaulding filled out a work activity questionnaire regarding Plaintiff's work, which the ALJ never acknowledged. AR 398. Spaulding stated that they did not consider his work worth the amount fully paid, because they gave him fewer or easier duties, provided him special transportation, expected lower production, provided extra help and supervision, and they stated Plaintiff provided lower quality work. *Id.* Spaulding noted that Plaintiff did not keep up with production, and due to the nature of their work, they "felt safety was compromised." *Id.* Spaulding further stated this safety concern led to them terminating his employment. *Id.* at 399. Finally, Spaulding stated that they experienced equipment failure after Plaintiff "had done something other than what he was supposed to do." *Id.*

The ALJ failed to consider the multiple ways in which Spaulding accommodated Plaintiff and his limited ability to complete the job. As such, the information regarding his past relevant work was not accurately conveyed to the VE. On remand, the ALJ should properly consider the nature of Plaintiff's work and the accommodations given to him by his employer.

**C.     GAF Scores**

Plaintiff further argues that the ALJ improperly cherry-picked GAF scores. GAF ratings are not controlling in disability determinations. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *Wilkins v. Barnhart*, 69 F. App'x 775, 780 (7th Cir. 2003) ("the GAF scale is intended to be used to make treatment decisions, and nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." (citing *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir. 2002))). The ALJ acknowledged and dismissed three GAF scores ranging from 50-60, correctly noting that GAF scores can vary based on an individual's presentation on the day of the assessment to the clinician. AR 25–26. However, the ALJ accepted a GAF score of 75 as reflective of improvements with his

depression. *Id.* at 26. The ALJ does provide any explanation for why she dismisses three separate sets of scores ranging from 50-60, yet accepts a score of 75 as indicative of improvement. While the ALJ is not required to accept any GAF scores as indicative of disability, the ALJ may not cherry pick GAF scores to fit her narrative. *Denton*, 596 F.3d at 425. The ALJ cherry-picked evidence in support of her conclusion without any explanation as to why some GAF scores were considered and others were not.

**D.     Listings**

Plaintiff also asserts that the ALJ fatally erred in finding that Plaintiff did not meet or medically equal any Listing, as Dr. Phillips' opinions support the Listing requirements for Listings 12.02, 12.04, 12.06, and 12.08. AR. at 22. As discussed above, the ALJ erred in the analysis of Dr. Phillips' opinions. Proper analysis of these opinions will allow the ALJ to provide a more thorough analysis of these Listings. However, the Court cannot make a determination regarding the Listings where the ALJ's treatment of the medical source opinions is flawed. The Court cannot on its own determine that Dr. Phillips' opinions deserve controlling weight. That is for the ALJ to determine based on a proper, full analysis of the opinions. As such, the Court cannot determine whether the ALJ did or did not err in the analysis of the Listing requirements. The ALJ will have the opportunity to reevaluate the Listings on remand.

**E.     Award of Benefits**

Plaintiff asks the Court to reverse and remand for an award of benefits or, in the alternative, for further proceedings. "An award of benefits is appropriate, however, only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005)). Based on the discussion above, an immediate award of benefits is not

appropriate as issues involved in the entitlement determination remain.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in Plaintiff's Brief [ECF No. 12] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion. The Court DENIES Plaintiff's request to award benefits.

SO ORDERED on August 27, 2020.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
